IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CESAR RAMIREZ, # R15877, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 13-cv-00535-JPG |
| | ) |
| ZACHARY ROECHEMAN, | ) |
| ZINDY GEE, | ) |
| SLAVADOR ANTHONY GODINEZ, | ) |
| C/O NALLEY, and | ) |
| UNKNOWN PARTIES, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Cesar Ramirez, serving a ten year sentence for Home Invasion and a consecutive six year term for predatory sexual assault, is currently incarcerated at Big Muddy Correctional Center ("Big Muddy"). Plaintiff has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. In accordance with 28 U.S.C. § 1915A, the Court must conduct a prompt threshold review of the complaint.

### 1. The Standard of Review

In relevant part, 28 U.S.C. § 1915A provides:

(a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
(b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
    (1) is frivolous, malicious, or fails to state a claim on which relief
    may be granted; or
    (2) seeks monetary relief from a defendant who is immune from
    such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility. *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### 2. The Complaint

The named defendants are Warden Zachary Roecheman, Food Services Supervisor Zindy Gee, Director of the Illinois Department of Corrections Salvador Anthony Godinez, and Correctional Officer ("C/O") Nalley; there are also five unidentified defendants. Plaintiff's four principal contentions are: (1) he should have been released from prison on June 28, 2011, after he served 85% of his sentence, but Defendants Roecheman, Gee and Godinez refused to serve Plaintiff's release papers, improperly enforced a false parole violation and revoked good conduct

credits to justify keeping him in custody;[1] (2) "the defendants," through lieutenants, C/O's and Dietary staff, have harassed and punished Plaintiff by refusing to release him, revoking good conduct credits, writing false disciplinary tickets, calling him "child raper," and repeatedly "shaking down" his cell, destroying and taking his property; (3) "the defendants" and a corrupt Adjustment Committee, have denied Plaintiff due process, falsely convicting him and punishing him with six months in segregation; and (4) on May 25, 2013, Defendant C/O Nalley and the five unidentified defendants strip searched Plaintiff in a demeaning manner, beat him and then refused to get him medical treatment.[2]

Based on the allegations in the complaint, the Court finds it convenient to divide the *pro se* action into the four counts summarized below. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

> **Count 1:** Defendants Roecheman, Gee and Godinez failed to release Plaintiff Ramirez from prison on June 28, 2011, when they improperly enforced a false parole violation and revoked good conduct credits, in violation of the Eighth Amendment and Plaintiff's due process rights under the Fourteenth Amendment;
>
> **Count 2:** All defendants, by and through other prison staff, harassed and punished Plaintiff by refusing to release him, revoking his good conduct credits, writing false disciplinary tickets, calling him "child raper," repeatedly "shaking down" his cell, destroying and taking his property, in violation of the Eighth Amendment;
>
> **Count 3:** All defendants, with the approval of Defendant Roecheman, convicted Plaintiff of a false disciplinary charge in a "fixed" hearing, in violation of his right to due process under the Fourteenth Amendment; and

---

[1] The complaint references a "false parole violation," the absence of "IDOC warrants of MSR" and a "PRB hearings," and the revocation of 70 days of good conduct credits. The specifics and interplay between these things is not set forth in the complaint, but the Court has attempted to summarize Plaintiff's argument, for better or for worse.

[2] The strip search and beating might have been separate incidents on different days.

> **Count 4:  On May 25, 2013, Defendant C/O Nalley and the five unidentified defendants strip searched Plaintiff in a demeaning manner, beat him and then refused to get him medical treatment, in violation of the Eighth Amendment.**

### 3.  Discussion

**Counts 1 and 3**

At the heart of Count 1 is the calculation of Plaintiff's sentence and "adjusted projected out date" (*see* Doc. 1, p. 9 (setting the "adjusted projected out date" as June 28, 2011, and the "mandatory out date" as May 22, 2017).  Similarly, Count 3 revolves around the propriety of the disciplinary report issued against Plaintiff and the hearing that resulted in his commitment to segregation.  Counts 1 and 3 are intertwined, in that Plaintiff's proper release date was impacted by the disciplinary conviction.

"[H]abeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of [Section] 1983."  *Heck v. Humphrey*, 512 U.S. 477, 481 (1994).  Although a plaintiff may challenge his continued confinement in a habeas corpus action pursuant to 28 U.S.C. § 2254, he must *first* present all of his claims to the Illinois courts.  The same principles apply relative to a disciplinary conviction.  *See Nelson v. Campbell*, 541 U.S. 637, 646-647 (2004).  *See also Heck,* 512 U.S. at 487; *Edwards v. Balisok,* 520 U.S. 641, 648 (1997).  A Section 1983 action cannot be brought "unless and until the inmate obtains favorable termination of a state, or federal habeas, challenge to his conviction or sentence." *Nelson*,  541 U.S. 637, 646-647.  There is no suggestion that Plaintiff has satisfied the "favorable termination" requirement—not even administratively relative to the disciplinary conviction. Therefore, Counts 1 and 3 are premature and will be dismissed without prejudice and without further discussion of the adequacy of those claims.

**Count 2**

Count 2 pertains to a variety of incidents that could be characterized as harassment and/or punishment: the refusal to release Plaintiff from custody; the revocation of Plaintiff's good conduct credits; false disciplinary tickets; calling Plaintiff "child raper"; repeatedly "shaking down" Plaintiff's cell; and the destruction and taking of Plaintiff's property. Count 2 is leveled against *all* defendants.

"[C]alculated harassment unrelated to [institutional] needs" can violate the Eighth Amendment. *See Scher v. Engelke,* 943 F.2d 921 (8th Cir. 1991) (repeated and disruptive searches for retaliatory purpose violated Eighth Amendment). "[I]f a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment …." *Bell v. Wolfish*, 441 U.S. 520, 539 (1979). Therefore, there is a legal foundation for Count 2. However, liability under Section 1983 requires a defendant's personal involvement in the alleged constitutional violation. *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003). The defendant must have caused or participated in the violation. *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005). Thus, the doctrine of *respondeat superior* is not applicable to Section 1983 actions. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)).

The allegations underlying Counts 1 and 3, and the documents attached to the complaint, indicate that *all* defendants were not involved in *all* of the aforementioned incidents. Moreover, the complaint specifically alleges that "the defendants" acted "thogh Lts and c/o's, and Dietary staff" [sic] (Doc. 1, p. 5). Thus, as pleaded, Count 2 does not allege the requisite personal involvement. Because there is some inconsistency that leaves open the possibility that certain

defendants did personally participate in at least some of the incidents of harassment, dismissal without prejudice is appropriate, to allow Plaintiff to amend the complaint to identify which defendants did what.

With all that said, calling Plaintiff "child raper"—does not amount to a constitutional violation. Although such name-calling may have evidentiary significance, standing alone, verbal harassment does not constitute cruel and unusual punishment. *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000). Therefore, that one aspect of Count 2 shall be dismissed with prejudice.

Regarding the claim that the defendants destroyed or stole Plaintiff's property, although not pleaded as a claim under the Due Process Clause of the Fourteenth Amendment, the Court observes that any such claim would fail. The Illinois Court of Claims provides Plaintiff with an adequate remedy to redress his property loss; he may also file an action in the state circuit court for the tort of conversion. *See Cirrincione v. Johnson,* 703 N.E.2d 67, 70 (Ill.1998).

**Count 4**

Count 4 states a colorable Eighth Amendment claim against C/O Nalley and the five unidentified defendants for the strip search, beating and failure to secure medical treatment for Plaintiff. Therefore, Count 4 can proceed.

**Severance**

In *George v. Smith*, 507 F.3d 605 (7th Cir. 2007), the Seventh Circuit emphasized that unrelated claims against different defendants belong in separate lawsuits, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act. *George,* 507 F.3d at 607, (citing 28 U.S.C. § 1915(b), (g)). Plaintiff apparently perceives an overarching intent to harass and/or punish Plaintiff that connects Counts 1-4. The allegations pertaining to Plaintiff's

sentence and related disciplinary matters, Counts 1 and 3, and even the allegations of harassment in Count 2 that tie into the disciplinary action against Plaintiff, can be maintained in one lawsuit. Count 4, however, is based on a separate incident, involving different defendants and distinct legal claims.

Consistent with the *George* decision and Federal Rule of Civil Procedure 21, the Court shall sever Count 4 of Plaintiff's complaint, and shall open a new case with a newly-assigned case number for that claim. However, Plaintiff shall have an opportunity to voluntarily dismiss the newly severed case if he does not wish to proceed on those claims or incur the additional filing fee. Because Counts 1 and 3 are being dismissed without prejudice, Count 2 is the only claim that shall proceed in the present case, Case No. 13-cv-00535-JPG.

### 4. Motion for Injunctive Relief

By motion filed June 18, 2013, Plaintiff Ramirez seeks an injunction preventing the defendants from "doing harmful and unconstitutional and harassment things" (Doc. 5, p. 1). The Court construes the motion as seeking both a temporary restraining order ("TRO") and a preliminary injunction.

Plaintiff asserts that on June 12, 2013, Defendant C/O Nalley and "co-conspirators" fabricated a disciplinary ticket against Plaintiff in retaliation for Plaintiff filing the present civil rights action. Plaintiff further states that he fears for his life. Plaintiff prays that the Court order the defendants to stop harassing him, and order Plaintiff's transfer to Jack Clark's Family House Drug Program, or to another prison.

Because Plaintiff raises the specter of life-threatening harm, the court will put aside for a moment the fact that Counts 2 and 4 are being severed into separate cases, and that theses new allegations of retaliatory harassment could form the basis of a third action (if available

administrative remedies were exhausted). Nevertheless, Plaintiff's motion must be denied.

A TRO may issue without notice *only* if:

(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

FED. R. CIV. P. 65(b)(1).

As to the request for a preliminary injunction, the United States Supreme Court has emphasized that a "preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion." *Christian Legal Soc. 'y v. Walker,* 453 F.3d 853, 870 (7th Cir. 2006) (quoting *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997) (emphasis in original)). In considering whether to grant injunctive relief, a district court must weigh the relative strengths and weaknesses of a plaintiff's claims in light of a five-part test that has long been part of the Seventh Circuit's jurisprudence.

Specifically, a plaintiff must establish: (1) that there is a reasonable or substantial likelihood that he would succeed on the merits; (2) that there is no adequate remedy at law; (3) that absent an injunction, he will suffer irreparable harm; (4) that the irreparable harm suffered by plaintiff in the absence of the injunctive relief will outweigh the irreparable harm that defendants will endure were the injunction granted; and (5) that the public interest would be served by an injunction. *Teamsters Local Unions Nos. 75 and 200 v. Barry Trucking,* 176 F.3d 1004, 1011 (7th Cir. 1999); *accord Judge v. Quinn,* 612 F.3d 537, 546 (7th Cir. 2010); *Pro's Sports Bar & Grill, Inc. v. City of Country Club Hills,* 589 F.3d 865, 872–73 (7th Cir. 2009).

Relative to securing a TRO, the motion is not supported by an affidavit as required, and the motion raises issues not set forth in the complaint. Regardless, Plaintiff's allegations do not

set forth specific facts demonstrating the likelihood of immediate and irreparable harm *before Defendants can be heard.*   Plaintiff's bald assertion that he fears for his life is insufficient. There is no explanation of how Plaintiff gets from the issuance of a false disciplinary report to life-threatening harm.  Insofar as he may have received a false disciplinary report (and may receive more), that does not cause irreparable injury requiring the sort of extraordinary action Plaintiff proposes.  Therefore, a TRO is not warranted.

Although the Court would typically refer the motion for preliminary injunction to a magistrate judge for further consideration, because of the precarious procedural posture of this case, the motion will be denied without prejudice.  Once Plaintiff files a viable complaint curing what ails Count 2, the case will be referred to a magistrate judge and Plaintiff will be free to seek injunctive relief as necessary.  Similarly, once Plaintiff confirms that he desires to proceed with a second action prosecuting Count 4 (and that he is willing to pay a second filing fee), he will be free to seek injunctive relief as necessary in that case.

### 5.  Disposition

**IT IS THEREFORE ORDERED** that, for the reasons stated, **COUNT 1 and COUNT 3** are **DISMISSED** without prejudice because they were prematurely filed.

**IT IS FURTHER ORDERED** that the aspects of **COUNT 2** pertaining to Plaintiff being called a "child raper" are **DISMISSED** with prejudice for failure to state a claim upon which relief can be granted; all other aspects of **COUNT 2** are **DISMISSED** without prejudice and with leave to amend.  On or before **August 9, 2013,** Plaintiff shall file an amended complaint re-pleading Count 2.  Any amended complaint will be subject to preliminary review pursuant to 28 U.S.C. § 1915A.  Failure to file a viable amended complaint could result in the dismissal of this action pursuant to Federal Rule of Civil Procedure 41(b).

**IT IS FURTHER ORDERED** that Plaintiff's Eighth Amendment claims in **COUNT 4**, which are unrelated to the claims in Count 2, are **SEVERED** into a new case. That new case shall be against **DEFENDANTS C/O NALLEY** and **UNKNOWN PARTIES** for strip searching Plaintiff in a demeaning manner, beating him and then refusing to get him medical treatment, in violation of the Eighth Amendment.

The new case **SHALL BE ASSIGNED** to the undersigned District Judge for further proceedings. In the new case, the Clerk is **DIRECTED** to file the following documents:

(1) This Memorandum and Order;
(2) The Original Complaint (Doc. 1);
(3) Plaintiff's motion to proceed *in forma pauperis* (Doc. 2);
(4) The Court's Order granting pauper status (Doc. 6); and
(5) Plaintiff's motion for injunctive relief (Doc. 5)

Plaintiff is **ADVISED** that if, for any reason, he does not wish to proceed with the newly-opened case, he must notify the Court in writing on or before **August 9, 2013.** Unless Plaintiff notifies the Court that he does not wish to pursue the newly opened action, he **will be responsible for an additional $350.00 filing fee** in the new case. Service shall not be ordered on Defendant **C/O NALLEY** (the only defendant identified) until after the deadline for Plaintiff's response. Service shall not be made upon the **UNKNOWN PARTIES** until such time as Plaintiff has identified them by name in a properly filed amended complaint. Plaintiff is **ADVISED** that it is his responsibility to provide the Court with the names and service addresses for these individuals.

Plaintiff's is again **ADVISED** that the obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable, regardless of whether he elects not to file an amended complaint, and regardless of whether any

amended complaint is dismissed upon preliminary review. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: July 10, 2013**

s/ J. PHIL GILBERT
United States District Judge